T.C. Memo. 2000-365

UNITED STATES TAX COURT

JOSÉ ANGEL LUJÁN, Petitioner <u>v</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24268-97.                    Filed December 4, 2000.


José Angel Luján, pro se.

<u>James P. Dawson</u> and <u>Tamara S. Moravia-Israel</u>, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>: Respondent determined the following
deficiencies in petitioner's Federal income taxes and an addition
to tax:

| Year | Deficiency | Addition to Tax Sec. 6654 |
|------|-----------|---------------------------|
| 1993 | $15,511 | $651 |
| 1994 | 62,745 | 3,232 |

All section references are to the Internal Revenue Code in effect for the years in issue.

The primary issue we must resolve is whether petitioner, an Argentinean citizen, is subject to U.S. tax on compensation he received during 1993 and 1994. Resolution of this issue requires us to decide whether during 1993 and 1994 petitioner was a "resident alien", as that term is defined in section 7701(b)(1)(A), which in turn requires us to determine whether petitioner meets the "substantial presence test" of section 7701(b)(3) for those years. If petitioner is subject to U.S. tax on the compensation he received during 1993 and 1994, we then must resolve whether petitioner is liable for the section 6654 addition to tax (failure to pay estimated income tax) for 1993 and 1994.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

### Background

Petitioner's mailing address was in Buenos Aires, Argentina, at the time he filed his petition contesting respondent's determination.

Petitioner was born and raised in Argentina. He received a law degree from the Universidad de Buenos Aires in 1971. In 1983, he entered the United States on a student visa. Petitioner's wife and children accompanied him.

Petitioner took courses at the University of Texas and its law school, receiving a master's degree in comparative jurisprudence in 1984, and a master's degree in Latin American studies in 1990. After completing his studies, petitioner accepted employment as an international attorney with an Austin, Texas, law firm. In addition, he worked for law firms located in New York and Washington, D.C.

At all relevant times, petitioner's family lived in Austin. In so doing, petitioner's children were able to complete high school in the United States.

Petitioner's personal belongings, as well as several automobiles that he and his wife owned, were located in Austin. Petitioner and his wife each held a driver's license issued by the State of Texas. Petitioner also maintained an Argentinean driver's license.

At all relevant times, petitioner and his wife maintained savings and checking accounts in Austin. Petitioner did not maintain a bank account in Argentina.

On May 3, 1993, petitioner was issued a B-1/B-2 visa (which type of visa is issued to a nonresident alien for entry into the United States for business purposes), expiring on May 2, 2003.

Consulting Work

Lone Star Power Argentina-I, L.P. (Lone Star), a U.S. partnership, retained petitioner, as a consultant, in connection with its procuring permission from the Argentinean Government to construct and operate an electrical power plant in Santa Fe Province, Argentina (located approximately 400 kilometers from Buenos Aires). For these services, Lone Star agreed to pay petitioner $15,000 per month and reimburse him for expenses he incurred in connection with his travel to (and stay in) Argentina.

Petitioner performed the majority of his services for Lone Star in Argentina. During his business trips to Argentina petitioner stayed at various hotels, took cabs, and dined at restaurants. During 1993, Lone Star paid petitioner $50,000 in compensation and reimbursed him for his expenses.

Falcon Seaboard Power Corp. (Falcon Seaboard), headquartered in Houston, Texas, replaced Lone Star with regard to the proposed construction of the power plant project. On February 2, 1994, petitioner and Falcon Seaboard entered into an agreement similar to that which petitioner had entered into with Lone Star (i.e., petitioner received $15,000 per month as a consulting fee and reimbursement for his out-of-pocket expenditures).

In November 1994, Falcon Seaboard established a presence in Argentina by organizing a wholly owned subsidiary, Falcon Seaboard Argentina, S.A. (Falcon Seaboard Argentina). Falcon Seaboard Argentina did not maintain an office in Argentina; rather, it utilized the office of its attorney, Ernesto Galante (Mr. Galante), in Buenos Aires, on a space-available basis.

Petitioner's business cards showed petitioner's business address to be both that of Falcon Seaboard in Houston and that of Mr. Galante in Buenos Aires.

During 1994, Falcon Seaboard paid petitioner $180,000 as a consulting fee and an unspecified amount as reimbursement for his hotel, taxi, and meal expenses in Argentina.

Over time, Falcon Seaboard realized that construction of the power plant project was not feasible, and ultimately abandoned the project.

After petitioner's consulting services were terminated, he returned to Austin. Prior to his termination, petitioner traveled to Austin as often as possible to be with his family. The following summarizes petitioner's entrances to and exits from the United States during 1993 and 1994 from petitioner's and governmental records:

## 1993

| Entry into U.S. per INS | Entry into U.S. per VISA | Exit Out of U.S. per P's Memo | Exit out of U.S. per INS | Exit out of U.S. per VISA | Entry into Argentina per Passport | Exit out of Argentina per Passport | Days within the U.S. | Total Days within the U.S. |
|---|---|---|---|---|---|---|---|---|
| | | | 01/15/93 | | 01/16/93 | | 15 days | |
| 02/02/93 | 02/02/93 | | | | | 02/01/93 | | |
| | | | 02/07/93 | | 02/08/93 | | 6 days | |
| 02/16/93 | 02/16/93 | | | | | 02/15/93 | | |
| | | | 03/22/93 | | 03/23/93 | | 35 days | |
| 03/28/93 | 03/28/93 | | | | | | | |
| | | | 04/20/93 | | 04/21/93 | | 24 days | |
| | 05/28/93 | | | | | 05/27/93 | | |
| | | 07/13/93 | | | 07/14/93 | | 47 days | |
| 08/13/93 | | | | | | 08/12/93 | | |
| | | | 08/25/93 | | 08/26/93 | | 13 days | |
| 10/01/93 | | | | | | 10/01/93 | | |
| | | | 10/26/93 | | 10/27/93 | | 26 days | |
| 11/19/93 | 11/19/93 | | | | | 11/19/93 | | |
| | | | 12/01/93 | | 12/02/93 | | 13 days | |
| 12/18/93 | 12/18/93 | | | | | 12/18/93 | 14 days | |
| | | | | | | | | 193 days |

<u>1994</u>

| Entry into U.S. per INS | Entry into U.S. per VISA | Exit out of U.S. per INS | Exit out of U.S. per VISA | Entry into Argentina per Passport | Exit out of Argentina per Passport | Days within the U.S. | Total Days within the U.S. |
|---|---|---|---|---|---|---|---|
| | | 01/30/94 | | 02/01/94 | | 30 days | |
| 02/19/94 | 02/19/94 | | | | 02/18/94 | | |
| | | 03/04/94 | | 03/05/94 | | 14 days | |
| | 03/24/94 | | | | | | |
| | | | | 04/03/94 | | 10 days | |
| 04/12/94 | 04/12/94 | | | | 04/11/94 | | |
| | | 04/24/94 | | 04/24/94 | | 13 days | |
| 04/26/94 | | | | | | | |
| | | | | 05/01/94 | | 5 days | |
| 05/08/94 | 05/08/94 | | | | 05/07/94 | | |
| | | | | 05/16/94 | | 8 days | |
| 06/18/94 | | | | | 06/17/94 | | |
| | | | | 07/02/94 | | 15 days | |
| 07/16/94 | 07/16/94 | | | | 07/15/94 | | |
| | | 07/27/94 | | 07/28/94 | | 12 days | |
| 08/05/94 | 08/05/94 | | | | | | |
| | | 08/25/94 | | 08/26/94 | | 21 days | |
| 09/16/94 | | | | | 09/15/94 | | |
| | | | | 10/10/94 | | 25 days | |
| 10/22/94 | 10/22/94 | | | | 10/21/94 | | |
| | | | | 11/01/94 | | 11 days | |
| 11/23/94 | 11/23/94 | | | | 11/22/94 | | |
| | | 12/02/94 | | | | 10 days | |
| 12/21/94 | | | | | | 11 days | |
| | | | | | | | 185 days |

Argentinean Activities

At all relevant times, petitioner maintained an Argentinean driver's license. Beginning in July 1993, he served as an adviser to the Argentinean military and was active in several Argentinean political groups.

Absence of Filing 1993 and 1994 Tax Returns

Petitioner did not file U.S. or Argentinean income tax returns for 1993 or 1994. Moreover, he did not pay any U.S. estimated income taxes for these years.

Notice of Deficiency

In the notice of deficiency, respondent determined that petitioner was a resident alien for 1993 and 1994, which required him to file U.S. income tax returns for those years, reflecting the compensation he received ($50,000 for 1993 and $180,000 for 1994). Respondent further determined that for both years, petitioner was liable for the section 6654(a) addition to tax for failure to pay estimated income tax.

## OPINION

In general, all U.S. citizens, wherever resident, and all resident alien individuals (citizens of a foreign country), are liable for income taxes imposed by the Internal Revenue Code, whether the income received is from sources within or without the United States. See sec. 1.1-1(b), Income Tax Regs. An individual is a nonresident alien, and generally not subject to U.S. income tax

on foreign source income, if the individual is neither a U.S. citizen nor a U.S. resident. See sec. 7701(b)(1)(B). An alien individual is treated as a U.S. resident for any calendar year if at any time during the year that individual: (1) Is a lawful U.S. permanent resident (the green card test); (2) meets the substantial presence test; or (3) makes an election to be treated as a lawful U.S. resident. See sec. 7701(b)(1)(A); sec. 301.7701(b)-1(b), Proced. & Admin. Regs.

There is no evidence in the record that petitioner was a lawful U.S. permanent resident or that he made an election to be treated as a resident pursuant to section 301.7701(b)-4(c)(3)(v), Proced. & Admin. Regs. Accordingly, petitioner is considered a resident alien only if he meets the section 7701(b)(3)(A) substantial presence test.

The substantial presence test is an objective test: an alien individual is treated as a U.S. resident alien with respect to any year in which the alien is present in the United States on at least 31 days during the current calendar year and for at least 183 days during the current year and the 2 preceding calendar years, calculated pursuant to a weighted formula.[1] See sec. 7701(b)(3)(A).

---

[1] Pursuant to sec. 7701(b)(3)(A), (1) each day of presence in the current year is counted as a full day, (2) each day of presence in the first preceding year is counted as one-third of a day, and (3) each day of presence in the second preceding year is counted as one-sixth of a day. See also sec. 301.7701(b)-1(c)(1), Proced. & Admin. Regs. In sum, the applicable multipliers are:

(continued...)

An individual is treated as present in the United States on any day that the individual is physically present in the United States at any time during the day. See sec. 7701(b)(7)(A). As such, the day of entry into the United States and the day of departure from the United States are both counted.

The parties disagree as to the number of days petitioner was present in the United States during 1993 and 1994. Although petitioner does not dispute the entry dates in the Immigration and Naturalization Service records, he disagrees with several departure dates that respondent utilizes. We believe the departure dates utilized by respondent are accurate.

Petitioner contends that he was not physically present in the United States for 183 days in either 1993 or 1994. Petitioner maintains that at most, he was present in the United States for 171 days in 1993 and 164 days in 1994. Respondent, on the other hand, maintains that petitioner was in the United States for 193 days in 1993 and 185 days in 1994.[2] The record supports respondent's

---

[1](...continued)

| | | |
|---|---|---|
| Current year | = | 1 |
| 1st preceding year | = | 1/3 |
| 2nd preceding year | = | 1/6 |

[2]  During opening statement at trial, respondent's counsel referred to petitioner being present in the United States for 158 days in 1994, whereas on brief, respondent refers to petitioner being present in the United States for 185 days in 1994. The record supports a finding that petitioner was present in the United States for 185 days in 1994, see supra p. 7.

calculations. In determining the number of days, petitioner incorrectly failed to include the day of entry into the United States and the day of departure from the United States.

On the basis of the record before us, we conclude that petitioner meets the substantial presence test for both years in issue; accordingly, petitioner is deemed a U.S. resident alien for 1993 and 1994 and is subject to U.S. tax on the compensation he received.

We now turn our attention to whether petitioner is liable for the section 6654 addition to tax for the years in issue. The section 6654 addition is imposed on an individual taxpayer who fails to make timely payments of estimated tax. An underpayment of estimated tax exists if a tax payment for any of the four installment period due dates (usually quarterly) is less than the amount of taxes required to be paid each installment. See sec. 6654(b)(1). The amount of the addition is determined by applying the applicable interest rate to the amount of the underpayment for the period of time that the underpayment exists. See sec. 6654(a).

Petitioner failed to make any estimated tax payments in 1993 and 1994, and he does not qualify for any exception to the section 6654 addition to tax. Consequently, he is liable for the section 6654 addition to tax for both years as determined by respondent.

In reaching our holdings, we have considered all of the arguments petitioner presented for contrary holdings (including

petitioner's claim that he qualifies for the "closer connection exception" of section 7701(b)(3)(B) and section 301.7701(b)-2(a), Proced. & Admin. Regs.) and, to the extent not discussed above, find them to be not relevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.